Willie DIXON

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 82–3913.**

United States District Court, E.D. Pennsylvania.

May 30, 1983.

Barry L. Kratzer, Needleman, Needleman, Caney, Stein & Talty, Ltd., Philadelphia, Pa., for plaintiff.

Peter Vaira, U.S. Atty., Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff seeks review under 42 U.S.C. § 405(g) of the denial of his disability claim. The Administrative Law Judge (ALJ) found plaintiff not disabled in his decision issued April 14, 1982, and plaintiff's request for review to the Appeals Council was denied. Before me are cross motions for summary judgment. For the following reasons, I will deny both and remand to the ALJ for further proceedings consistent with this memorandum.

Plaintiff Willie Dixon was struck by an automobile on September 1, 1980, and sustained injuries to his left arm. He was 49 years old at the time and had worked in unskilled jobs in the 15 years prior to the incident. The record indicates that he has had little schooling and is functionally illiterate. He has not worked since the accident, and his last known income was $100 a month from a pension fund.

Plaintiff's claim rests primarily on the impairment to his left arm and hand caused by neuropathy and pain. He underwent surgery on October 14, 1980 to correct the neuropathy. However, his inability to maneuver his arm and hand persisted. Plaintiff also claims impairments due to an ulcer, psychological depression, alcohol depend-

ence, and the combination of all four impairments.

None of the medical testimony substantiates an impairment due to an ulcer condition, psychological depression or alcohol dependence. However, the evidence in the record supports plaintiff's claimed arm/hand impairment. An electromyelogram documented neuropathy in his arm (Tr. 119). The nerve abnormality was severe enough to require surgery. Following the operation his treating physician, Dr. Anthony, initially thought that the neuropathy was corrected; however, his last progress report showed much skepticism as to plaintiff's improvement (Tr. 114). Three months later, and nine months after the operation, a neurologic examination was made by Dr. Barrer. His report concluded that plaintiff's condition was serious and he might lose the use of his arm and hand (Tr. 124–126). Further, plaintiff consistently complained of pain and lack of mobility of his arm and hand, and this is contained in the physicians' reports.

Despite the overwhelming evidence in support of plaintiff's claim, the ALJ found that it did not substantiate a finding of disability. He concluded that plaintiff's arm/hand impairment was not severe enough to prevent him from returning to past relevant work (as a janitor). The primary issue before the Court is whether there is substantial evidence in the record to support this conclusion.

■ I am bound to accept the ALJ's decision only if the record contains such relevant evidence as a reasonable mind might accept as adequate to support his findings. *Taybron v. Harris,* 667 F.2d 412, 415 at fn. 5 (3rd Cir.1981); *Thompson v. Schweiker,* 541 F.Supp. 681, 682 (E.D.Pa. 1982). After reviewing the record in this matter, I cannot conclude that a reasonable mind would support the ALJ's findings.

■ First, he essentially ignored the objective medical data documenting plaintiff's neuropathy in his arm. Second, he selectively relied on certain medical reports while rejecting others improperly. For in-

stance, his analysis of Dr. Anthony's reports suggested that the last report (questioning plaintiff's improvement) was inconclusive, yet he relied inordinately on Dr. Anthony's early impression that the operation was a success. He then discounted the neurologic report by Dr. Barrer as unsupported by objective medical data. However, a treating physician's opinion cannot be rejected unless the ALJ points to other medical evidence of record, *Rossi v. Califano,* 602 F.2d 55, 57–58 (3rd Cir., 1979), and it is an error of law to reject the treating physician's opinion without adequate explanation. *Schaaf v. Matthews,* 574 F.2d 157, 160 (3rd Cir.1978). Further, subjective evidence may support a finding of disability even though unsupported by objective medical data, *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir.1974), and the ALJ may not make speculative inferences from medical reports. *Smith v. Califano,* 637 F.2d 968, 971–972 (3rd Cir.1981).

In this case, the ALJ does not adequately explain why the medical evidence does not support plaintiff's arm/hand impairment, nor does he rely on any contradictory medical evidence. The ALJ makes inferences concerning plaintiff's impairment which directly conflict with the medical reports. These errors are fatal to his finding of no disability.

Third, the ALJ discredits plaintiff's subjective complaints of pain in an unreasonable fashion. He found that plaintiff's testimony was not credible for a number of reasons. He found that plaintiff's contention that he was unable to afford treatment or medication was questionable because Mr. Dixon visited Dr. Anthony once and purchased Anacin and Tylenol regularly. To the contrary, I fail to see a relation between the expense of hospital treatment and prescription drugs, and the costs of one doctor visit and Anacin and Tylenol.

Additionally, the ALJ found that plaintiff's complaints of pain were not sincere because he could squeeze a ball to exercise his left hand. However, the ALJ ignores that this activity is merely to prevent atrophy; it is incredible that the ALJ would see

this as proof that plaintiff's pain is not severely disabling. Finally, the ALJ did not believe plaintiff's testimony that he could not get financial assistance from welfare agencies, and that he was denied employment as a dishwasher and security guard because of his physical limitations. It seems to me that these criteria do not significantly detract from plaintiff's credibility, and that the ALJ did not use sound analysis in using them to discredit Mr. Dixon's testimony. The fact that plaintiff could get welfare assistance doesn't guarantee he could then afford treatment, and his inability to obtain work actually supports his contention of disability.

 Although a court normally defers to the ALJ on findings of credibility, the case should be remanded if the ALJ has made a determination on credibility on an improper basis. *King v. Secretary of HEW,* 481 F.Supp. 947, 948 (E.D.Pa.1979); *Curtin v. Harris,* 508 F.Supp. 791, 795 (D.N.J.1981). While the ALJ is entitled to discredit the plaintiff's testimony as to pain, he is required to state facts upon which he bases his conclusion which must be clear and reasonable. *Singleton v. Schweiker,* 551 F.Supp. 715, 722 (3rd Cir.1982). Here, the ALJ did not reasonably deal with plaintiff's complaints of pain, and I reject his finding on credibility.

The law is clear as to the proper analysis of the plaintiff's evidence. The ALJ must consider all the evidence—objective medical data, expert medical opinions, and subjective complaints—and he must provide a reasonable explanation for rejecting any evidence. *Cotter v. Harris,* 642 F.2d 700, 704 (3rd Cir.1981). Here, the ALJ virtually ignored the electromyelogram results, distorted Dr. Anthony's reports and discounted Dr. Barrer's without relying on any sound medical evidence, and unreasonably discredited plaintiff's testimony. By his improper treatment of all the evidence, the ALJ undermined the foundation for his decision that plaintiff can return to past relevant work.

The regulations set forth five sequential steps in evaluating disability. 20 CFR § 404.1520; *Santise v. Schweiker,* 676 F.2d 925 (3rd Cir.1982). The ALJ stopped his analysis at step four, after finding that plaintiff can return to past work as a janitor. Because this finding is contrary to the evidence, the ALJ made an error of law and the case must be remanded to proceed with the sequential analysis. The plaintiff has shown that he cannot return to former work, so the burden shifts to the Secretary of Health and Human Services to show that there is other employment the claimant is capable of performing. *Dobrowolsky v. Califano,* 606 F.2d 403 (3rd Cir.1979).

Accordingly, I will remand so that the ALJ can proceed with the final step of the required analysis to determine if there is other substantial gainful activity the plaintiff can perform in light of his residual functional capacity, age, education, and work experience.