Edward OGDEN, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

Civ. No. 86–1733.

United States District Court,
M.D. Pennsylvania.

July 29, 1987.

Stephen R. Krone, Central Pa. Legal Services, Harrisburg, Pa., for plaintiff.

Wayne P. Samuelson, Asst. U.S. Atty., Lewisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Presently pending before the court in this case is a Report of Magistrate J. Andrew Smyser dated June 8, 1987 which recommends that summary judgment be granted in favor of defendant. For the

reasons set forth below, the court will adopt the Magistrate's Report.

## BACKGROUND

Plaintiff suffered serious injuries [1] in a truck accident on June 19, 1979. He previously filed applications for disability benefits on February 1, 1980 and April 1, 1980. The Secretary rendered a final decision adverse to plaintiff on these applications on March 19, 1982. Meanwhile, plaintiff was incarcerated in the state prison system from February 2, 1980 through April 1982.

Plaintiff filed his current application on August 5, 1985. Following an administrative hearing, an administrative law judge (ALJ) awarded benefits by a decision dated May 15, 1986. Specifically, the ALJ found that plaintiff was disabled as of September 29, 1983 and awarded benefits from that date.[2] Asserting that his disability onset date was June 19, 1979, plaintiff requested that the Appeals Council review the ALJ's decision. His request was denied on October 9, 1986.

Seeking judicial review of the Secretary's determination of his disability onset date, plaintiff commenced this action on December 5, 1986. The parties filed cross summary judgment motions, the merits of which were addressed by the Magistrate in his Report. The Magistrate found that the ALJ had not conducted a *de facto* review of plaintiff's two previous applications and, thus, had not waived the *res judicata* effect of the Secretary's March 19, 1982 decision denying plaintiff's prior applications. The Magistrate further determined that plaintiff's due process rights had not been violated by the Secretary's refusal to reopen his earlier applications. Finally, the Magistrate agreed with plaintiff that the *res judicata* doctrine applied up to the date of the ALJ's decision on plaintiff's previous applications, November 13, 1981, as opposed to the date of the Secretary's final decision on those applications, March 19,

---

1. The ALJ determined in 1986 that plaintiff suffered from degenerative joint disease, anxiety depression, personality disorder, post-concussion syndrome, post-traumatic seizure disorder, postural difficulties and dizziness.

2. Plaintiff was last insured for disability benefits on September 30, 1983.

1982. The Magistrate concluded, however, that there was substantial evidence in the administrative record supporting the Secretary's decision that plaintiff was not disabled before September 29, 1983.

Plaintiff filed Objections to the Magistrate's Report and a Brief in Support thereof on June 19, 1987. He presents the following arguments:

(1) By considering evidence relating to plaintiff's condition prior to March of 1982, the ALJ *de facto* reopened plaintiff's prior applications and thereby waived the doctrine of *res judicata.*

(2) Plaintiff, who was then in prison, was treated in a fundamentally unfair manner during the processing of his previous applications in that the Secretary failed to adequately expand the administrative record. The Secretary, then, failed to rectify this due process violation when he refused to reopen plaintiff's two earlier applications.

(3) The defendant has raised *res judicata,* which precludes the relitigation of identical claims but not the doctrine of collateral estoppel, which bars the relitigation of identical issues. Since plaintiff presents a new claim and since collateral estoppel was never raised, no preclusive effect should be applied to his current application.

(4) A review of the record indicates that plaintiff was disabled before September 29, 1983.

No further documents were submitted by the parties, and the present dispute is now ripe for consideration.

## ANALYSIS

### De Facto Reopening of Prior Applications

▪ Where an ALJ correctly determines that the reopening of a previously adjudicated claim is barred by *res judicata,* a district court is without jurisdiction to review that decision. *Stauffer v. Califano,* 693 F.2d 306 (3d Cir.1982). However, where a subsequent claim reveals evidence warranting a reopening of earlier claims and where the Secretary, although not expressly stating that sufficient cause for reopening exists, reviews the entire claim and renders a final decision on the merits after a hearing, a reviewing court is not precluded from finding that a reopening has occurred. *Purter v. Heckler,* 771 F.2d 682, 693 (3d Cir.1985). *See also McGowen v. Harris,* 666 F.2d 60, 65 (4th Cir.1981) (if a subsequent application for benefits presents the same claim as the initial application for *res judicata* purposes and if it has been reconsidered on the merits to any extent at the administrative level, it is properly treated as having been reopened by the Secretary as a matter of administrative discretion).

Both the decision in *Purter v. Heckler, supra,* and the cases relied upon therein weigh heavily the factor of whether or not the ALJ or the Appeals Council specifically addressed the applicability of the *res judicata* doctrine. In the present case, the ALJ stated in his decision:

> Although the claimant's condition had its inception in the injury suffered in 1979, it is not the beginning of a condition which determines eligibility of disability benefits but rather only when and if it reaches a point that it precludes all substantial gainful activity. In this regard, ... the claimant had previously filed an application for a period of disability and disability insurance benefits which had been denied through the Appeals Council level. However, no new material or material evidence has been presented which would warrant the reopening of this application. Accordingly, the undersigned finds that this issue of the claimant's disability through March 19, 1982 is *res judicata.*

*See* administrative record at 18.

▪ Having reviewed the ALJ's decision, the court concludes that plaintiff's prior applications were not reopened during the administrative proceedings on his latest application. The Magistrate did receive evidence concerning plaintiff's condition prior to March of 1982 and did make reference to that evidence in his decision, but it is apparent from the ALJ's decision that he did not

address the merits of plaintiff's disability status prior to March of 1982. Having expressly indicated that any re-examination of plaintiff's disability status prior to March of 1982 was barred by the doctrine of *res judicata*, the ALJ was not prohibited from examining background medical evidence stemming from before that date in order to determine plaintiff's disability status after March of 1982.

Plaintiff apparently would have this court rule that a denial of previous applications is *de facto* reopened whenever an ALJ reviews evidence pertaining to a claimant's condition prior to the denial of those previous applications. Such a rule would be unduly broad and rigid. For example, in the present case, the ALJ was required to examine plaintiff's medical record for the period before March 1982 to determine whether plaintiff's previous applications should be reopened. In addition, it would be unfair to hold that in order to apply the *res judicata* doctrine, the ALJ must make a determination as to plaintiff's disability status after March 1982 without the benefit of any background medical information from before that date. Consequently, the court holds that plaintiff's previous applications were not reopened during his administrative proceedings in 1986.

The court also notes that plaintiff was ineligible for benefits during the period of his incarceration, February 1980 through April 1982. *See* 20 C.F.R. § 404.468.[3] Moreover, under 20 C.F.R. § 404.988, a decision cannot be reopened if the request for reopening or the new application is filed more than four (4) years after the date of the initial determination on the earlier application.[4] In the instant case, the initial determination for the prior applications was made on May 6, 1980, and the current application was filed on August 5, 1985. Since more than four (4) years elapsed between the relevant dates, 20 C.F.R. § 404.988 precluded any reopening of plaintiff's prior applications.

*Due Process Violation*

■ A final prior decision does not jurisdictionally bar judicial review of an agency refusal to reopen where a claimant raises constitutional questions in support of his request for reopening. *Penner v. Schweiker*, 701 F.2d 256, 259–60 (3d Cir. 1983) (citing *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

In the present dispute, plaintiff concedes that the cases upon which he relies for support on the due process issue involved claimants who failed to pursue their administrative remedies in prior disability proceedings because of their impaired mental capacity. Although plaintiff suffers from a mental impairment, he has specifically declined to raise that impairment in relation to the due process issue. *See* document 10 of the record at 18. Rather, plaintiff points to the following circumstances to sustain his claim that his due process rights were violated during the proceedings on his prior applications:

(1) He was incarcerated during that period.

(2) He was not represented by counsel.

(3) The ALJ failed to adequately expand the record or assist plaintiff in doing so.

*Id.* at 18–19. In particular, plaintiff cites the absence of medical information from the person named as his treating physician and the lack of testimony from prison guards and fellow inmates at his initial administrative hearing.

■ The court concludes that plaintiff has not established that he was treated in a fundamentally unfair manner during the adjudication of his previous applications. Having specifically declined to raise the impact of his mental impairment in relation to his due process argument, he has not indicated to the court, by affidavit or otherwise, why he was incapable of recognizing the significance of the above-noted evidence or why he was unable to obtain it. That plaintiff was incarcerated and unrep-

---

**3.** While imprisoned, plaintiff was still entitled to request benefits for the period between his truck accident and his incarceration.

**4.** The regulation at 20 C.F.R. § 404.988 lists certain exceptions to the four (4) year time limitation, none of which apply in this case.

resented by counsel do not, alone, establish that he was treated in a fundamentally unfair manner. Furthermore, as defendant's counsel observed, "There is no evidence in the record showing that it was impossible for [plaintiff] to understand and timely act within the prescriptions of the appeals process. After denial of his first application, plaintiff did, in fact, request reconsideration of that decision." *See* document 11 at 7–8.

Thus, because of the lack of evidence in support of plaintiff's due process argument, the court finds no merit in his contention that his constitutional rights were infringed during the administrative proceedings on his prior applications. The court, then, lacks jurisdiction to review the Secretary's decision not to reopen plaintiff's prior applications. *See Stauffer v. Califano, supra.*

### Defendant's Failure to Raise Collateral Estoppel

Plaintiff distinguishes between claim preclusion (*res judicata*) and the concept of issue preclusion (collateral estoppel). Acknowledging that the affirmative defense of issue preclusion might bar the relitigation of his disability status prior to November of 1981, he points out that the Secretary has never raised collateral estoppel.

First, the court notes that the label *"res judicata"* is sometimes used to refer to both issue preclusion and claim preclusion. *Purter v. Heckler, supra,* at 689 n. 5. Moreover, the distinction between issue preclusion and claim preclusion is often blurred. The Court of Appeals for the Third Circuit has remarked:

> The difference between claim preclusion and issue preclusion in many cases may be more fiction than fact. In *Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co., Ltd.,* 750 F.2d 267 (3d Cir.1984), this court recently remarked that the federal common law pertaining to collateral estoppel has been interpreted by the courts so broadly that the doctrine of issue preclusion is 'virtually

indistinguishable from *res judicata.*' Id at 271 n. 2.

*Id.*

In any event, the Secretary has clearly raised the affirmative defense of *res judicata,* in the sense of claim preclusion, both in the administrative proceedings and upon judicial review. In order to successfully assert the defense of *res judicata,* or claim preclusion, the party asserting it must show the following: (1) a final judgment on the merits in a prior suit; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based upon the same cause of action. *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984).

Plaintiff appears to argue that he now presents a new cause of action because his claim for benefits dating back to 1979 is contained in a new application which is distinct from his two previous applications. *See* document 15 at 5. The Magistrate correctly observed:

> The plaintiff finds a difference to exist between the question of whether [he] was disabled prior to March 19, 1982 for purposes of his earlier claim for benefits prior to March 19, 1982 and the question whether the plaintiff was disabled prior to March 19, 1982 for purposes of the determination of an onset date to be used in computing present benefits. We do not agree that there is a material distinction. The question in both instances is whether the plaintiff was disabled prior to March 19, 1982.

*See* document 13 at 2.

In short, plaintiff presents the same cause of action in his current application as set forth in his previous applications, *i.e.,* disability caused by injuries stemming from his 1979 truck accident, and the Secretary properly invoked the affirmative defense of *res judicata* to bar relitigation of matters resolved through the adjudication of plaintiff's prior applications.

### Disability Onset Date

The court's review of agency findings is limited to determining whether those findings are supported by substantial

evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401, 91 S.Ct. at 1427; *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence. *Brewster v. Heckler*, 786 F.2d 581 (3d Cir.1986).

The ALJ found that plaintiff was disabled since September 29, 1983, one day before his insured status expired. Plaintiff maintains that he was disabled since his 1979 truck accident and that, regardless of whether *res judicata* applies, his disability benefits should commence from a date earlier than September 1983. He criticizes the Magistrate's Report because the Magistrate made no reference to supporting evidence for his conclusion that plaintiff was capable of working through his release from prison in April of 1982. Plaintiff also asserts that the Magistrate failed to give proper consideration to plaintiff's complaints of dizziness.[5]

With regard to plaintiff's employability while in prison, the ALJ in his decision specifically referred to a prison medical report which listed plaintiff's work-related restrictions and which prohibited him only from work near moving machinery or involving climbing. *See* administrative transcript at 18, 231–32. It can safely be assumed that the Magistrate, like the ALJ, was relying on this prison medical report in concluding that plaintiff was capable of working during his incarceration.

As for plaintiff's dizziness, the administrative record indicates that plaintiff's dizziness has remained constant since 1979. *See* administrative transcript at 74. In view of the denial of plaintiff's previous applications and the determination of prison medical personnel that plaintiff was capable of working, it is apparent that plaintiff's dizziness alone did not render him

disabled. The ALJ found that a combination of medical problems (degenerative joint disease, anxiety depression, personality disorder, post-concussion syndrome, post-traumatic seizure disorder, postural difficulties and dizziness) caused plaintiff's disability. *See* administrative record at 19. Some of his ailments, such as his joint disease, had progressively worsened since 1979. *Id.* at 74. As the ALJ stated in his decision, "It is difficult in a case like the present one where the claimant is suffering from an impairment which gradually increases with severity over a period of time to determine the exact date on which the effects of that impairment became so severe that the individual was no longer able to engage in any work activity." *Id.* at 18. In concluding that plaintiff's onset date was September 29, 1983, the ALJ noted that he was "taking into account the progressive nature of the claimant's impairment" and was "giving the claimant the benefit of the doubt." *Id.*

■ It is evident, then, that plaintiff's dizziness, which was a constant factor since 1979, did not by itself render plaintiff disabled. Rather, his dizziness must be considered in conjunction with his other ailments, some of which are degenerative in nature. Viewing plaintiff's medical condition as a whole, the court holds that the Secretary's finding that plaintiff became disabled on September 29, 1983 is supported by substantial evidence.

Having carefully and independently reviewed the record in this case, the court has decided to adopt the Magistrate's Report.

An appropriate Order will enter.

## ORDER

NOW, this 29th day of July, 1987, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Report of Magistrate J. Andrew Smyser is adopted.

---

5. Plaintiff experiences spells of dizziness three or four times per month for approximately one hour per occurrence.

(2) Plaintiff's Motion for Summary Judgment is denied.

(3) Defendant's Motion for Summary Judgment is granted, and judgment is entered in favor of defendant.

(4) The Clerk of Court is directed to close this case.