**William HANUSIEWICZ, Plaintiff,**

v.

**Otis R. BOWEN, etc., Defendant.**

**Civ. No. 86–4166 (AET).**

United States District Court,
D. New Jersey.

Jan. 29, 1988.

---

Purrazzella and Purrazzella, Toms River, N.J., for plaintiff.

Stephanie A. Ebers, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

ANNE E. THOMPSON, District Judge.

This matter comes before the court on an appeal by plaintiff from a determination by the Secretary of the Department of Health and Human Services ["Secretary"]. Plaintiff, William Hanusiewicz, brings this action under Sections 216(i) and 223 seeking review of a final determination of the Secretary who denied plaintiff's application for disability benefits.

## PROCEDURAL HISTORY

Plaintiff filed for disability insurance on March 28, 1985 alleging disability as of August 13, 1980 due to chemical poisoning and neurological damage. He initially was denied benefits on May 20, 1984 and upon reconsideration on November 21, 1985. Plaintiff then filed a request for a hearing. Following a hearing, an Administrative Law Judge ["ALJ"] denied plaintiff's request for benefits on June 2, 1986. The Appeals Council denied plaintiff's request for review on September 12, 1986 and the ALJ's decision became the decision of the Secretary. Plaintiff filed this appeal in U.S. District Court on October 22, 1986.

Plaintiff had previously filed a request for disability on August 28, 1981 alleging disability beginning August 13, 1980. This claim was denied in an ALJ's decision dated September 27, 1982. Plaintiff's request for review was denied by the Appeals Council on May 3, 1983. Plaintiff did not pursue that application further.

## STATEMENT OF FACTS

Mr. Hanusiewicz was born September 19, 1931 and was 54 years old at the time of the hearing. Plaintiff has a high school education and last worked on August 13, 1980. He is married and lives with his wife. Plaintiff has two children from a previous marriage. He worked as a printing press operator for 25 years and was involved in using chemicals on a daily basis. He also was required to lift heavy boxes and to stand at the machine all day.

Plaintiff alleges that his disability is caused by chemical poisoning from his job as a pressman. Plaintiff testified that the chemical poisoning has caused nerve deterioration or neuropathy. Plaintiff also testified that in 1980 he was in a car accident and suffered back, hand, neck and head injuries. He stated that his physical problems now include limping, hands falling asleep, continuous peeling of skin on his hands, and pain in both legs. Plaintiff also stated that he has difficulty sitting. He stated he can only walk a half block and then he must slow down and rest because of leg and back pains. The plaintiff also claims that he can stand comfortably for no more than 10–15 minutes. Mr. Hanusiewicz testified that he has no skills other than those developed in his employment as a pressman. He has no education or vocational training beyond high school. Plaintiff does have a valid driver's license but only drives when necessary.

Plaintiff testified that he no longer takes the prescription pain killers prescribed by his doctors because they were not helping him. Plaintiff has had no further medical treatment since November 1983 because there is nothing further the doctors can do for him. Plaintiff did see Dr. Varner in December 1985 to have his lungs checked because of shortness of breath; however, the doctor concluded that his lungs were clear.

Plaintiff stated that he usually spends his days at home. He does not exercise, does not repair things around the house and does not do the laundry or cook. The plaintiff's mother and children have helped him meet expenses. He has no insurance and must pay all his doctors' bills in advance. His wife has just started a job as a substitute teacher.

The ALJ concluded that plaintiff has shown that he would be unable to return to his prior job as a pressman. The ALJ found that the medical evidence established that the claimant has mild, peripheral neuropathy, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ also concluded that claimant's testimony regarding pain and his inability to engage in any substantial gainful activity is not credible when viewed in the context of the overall record. The ALJ concluded that as there appeared to be no evidence of tenderness, muscle spasms or atrophy of the musculature, plaintiff's complaints of pain did not correspond to any objective findings.

## DISCUSSION

■ A decision of the Secretary concerning disability benefits must be upheld by the court if an examination of the record reveals substantial evidence supporting the Secretary's conclusion. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). If there is only a slight preponderance of the evidence on one side or the other, the Secretary's finding should be affirmed. *Toborowski v. Finch (Secretary of Health, Education and Welfare)*, 363 F.Supp. 717 (E.D.Pa. 1973). Thus, the court is to look at the record as a whole and then determine whether or not there is substantial evidence to support the Secretary's decision. *Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir.1981) (*quoting Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837, 841 (3d Cir.1974)). Plaintiff has the

initial burden of demonstrating by medical evidence that he is unable to return to his former occupation. *Santise v. Schweiker,* 676 F.2d 925, 938 (3d Cir.1982) (*quoting Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979)). Once plaintiff has met that burden, then the burden shifts to the Secretary who must establish with substantial evidence that plaintiff, in view of his age, education, work experience and degree of impairment, has the ability to engage in alternative substantial gainful employment. *Podedworny v. Harris,* 745 F.2d 210 (3d Cir.1984).

■ In deciding whether an applicant is entitled to disability benefits the ALJ must determine (1) whether the claimant is currently working; (2) if not, whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (3) if not, whether the claimant retains the residual functional capacity to do his or her past work; and (4) if not, whether he or she can perform any other jobs existing in the national economy. *Santise, supra.* Although the applicable regulation, 20 C.F.R. § 404.1520, includes a fifth criterion related to a subjective measure of the severity of the impairment, this criterion has been stricken from the regulation as inconsistent with the Act. *Baeder v. Heckler,* 768 F.2d 547 (3d Cir.1985).

■ In order to assist the ALJ in determining whether there are other jobs in the national economy which the claimant can perform, the ALJ is authorized to make use of the medical-vocational guidelines ["the grids"] located at 20 C.F.R. § 404, Subpart P, Appendix 2. *See* 20 C.F.R. § 404.1569. The ALJ is not, however, bound by the grids when an individual has both strength and nonexertional limitations. *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982). In the case of Mr. Hanusiewicz the ALJ determined that the plaintiff cannot return to his previous employment as a pressman because he is not able to perform heavy duty work. The ALJ did conclude, however, that plaintiff has the residual functional capacity to perform the full range of light work set forth in 20 C.F.R. § 404.1567. The ALJ also concluded that

the pain alleged by the plaintiff did not by itself nor in combination with his other limitations render him disabled.

■ When plaintiff alleges disabling pain, he must prove that any symptom alleged as disabling results from a physical impairment demonstrable by medically acceptable clinical or laboratory techniques that could be expected to produce pain. Plaintiff is not required to show objective evidence of the pain itself, but he must provide "objective medical evidence of some condition that could reasonably produce pain ..." *Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir.1984). In this case the ALJ found that the claimant's allegations of disabling pain were not corroborated by the evidence in the record and, therefore, were not credible. The ALJ did acknowledge that plaintiff does have some symptoms of pain, although the ALJ concluded the pain was not as severe as the plaintiff contends. Dr. Godfrey's report which was among the most recent did not indicate any conditions which could lead to disabling pain, although he did indicate some lower back pain. Furthermore, plaintiff has not been taking any prescription medication for the pain. Although plaintiff testified that the doctor had suggested narcotic drugs and did not wish to take them, there was no evidence offered that indicated that any doctors had attempted to prescribe narcotic drugs. Based on the doctors' reports and the testimony the ALJ determined that plaintiff's complaints as to the severity of his pain were not credible.

■ Plaintiff has seen numerous doctors only one of whom indicated that plaintiff was totally disabled. Various other medical reports do find that plaintiff is limited in some movements such as walking or lifting. Based on his overall review of the doctor's reports the ALJ found that plaintiff was not disabled. Dr. Norman Svellich, who examined plaintiff in December 1981, reported that claimant had full range of motion in his lumbar spine, that neurological, sensory, vascular and motor in lower extremities were within normal limits and that straight leg raising was also negative. Tests performed in March 1985 by

Dr. Jocson revealed that the evidence of lumbar radiculopathy that had been seen in earlier studies had more recently disappeared. Plaintiff did have surgery in November 1982 for carpal tunnel syndrome and in November 1982 Dr. Cassvant found that neuropathy still existed and concluded that major improvement was unlikely. Plaintiff was examined by Dr. Mario Mancheno in April 1985. Dr. Mancheno observed that plaintiff walked normally and had no difficulty getting on to or lying down on the examination table. He found that claimant had full range of motion in most parts of his body. Despite some paresthesia in the medial nerve territory of the left hand, Dr. Mancheno noted no other sensory, motor, or reflex abnormalities. Finally, an examination by Dr. Godfrey, in conjunction with the State of New Jersey Division of Disability Determinations, found full range of motion in shoulder, elbow, fingers, hips, knees and ankle joints. Based on his analysis of this evidence the ALJ concluded that the plaintiff was not disabled.

The court notes that in 1982 both Dr. Blackwell and Dr. Jassey completed physical capacities evaluations of the plaintiff. Both doctors indicated that plaintiff could sit, stand, and walk for one hour each in an eight hour day. Dr. Blackwell indicated that plaintiff could do simple grasping and fine manipulation repetitively with each hand, but could not do repetitive pushing and pulling with his hands. Dr. Jassey also indicated that plaintiff could do simple grasping, but could not push and pull arm controls. Both doctors indicated that plaintiff could not use his feet for repetitive movements such as operating foot controls. Finally, both doctors noted that plaintiff should not have any exposure to dust, fumes or gases. Two other doctors, Dr. Godfrey and Dr. Mancheno, verified plaintiff's complaint that he has scaly dermatitis on both hands.

Based on his evaluation of the evidence, the ALJ concluded that plaintiff was not disabled. The ALJ further concluded that plaintiff could do the full range of light work. The court finds, however, that the ALJ failed to adequately consider whether the fact that claimant has non-exertional impairments and may be restricted from performing a full range of light work activities makes the application of the grids inappropriate. The ALJ never addressed whether certain exertional and non-exertional limitations would restrict Hanusiewicz's access to the full range of light jobs. *See Channel v. Heckler,* 747 F.2d 577, 581 (10th Cir.1984).

As noted above, those doctors who completed physical capacities evaluations indicated restriction on plaintiff's ability to push and pull with his arms, his ability to use foot pedals and his ability to sit or stand for consecutive hours. The ALJ does not adequately address these findings, instead he relies on reports which do not assess plaintiff's ability to do specific types of tasks. The ALJ never makes findings that these physical limitations will not interfere with plaintiff's ability to do the entire range of jobs in the light work category nor does he make a finding that these limitations do not exist. Furthermore, several doctors noted that plaintiff has a skin disease on his hands and two doctors noted that plaintiff should not be exposed to dust, gases or fumes. As courts have noted, skin impairments and environmental restrictions are non-exertional impairments which may limit the types of jobs claimants can do. *Channel,* 747 F.2d at 580. *See also Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir.1987). All of the above restrictions could interfere with the plaintiff's ability to do a full range of work as defined by the grids. *Santise,* 676 F.2d at 935. If upon further examination the ALJ concludes that any of these restrictions impede plaintiff's ability to perform the full range of light work, the ALJ must take the testimony of a vocational expert to determine whether appropriate jobs exist for the plaintiff.

If the claimant's characteristics do not match those in the regulations—either because the claimant is suffering from a non-exertional impairment or is precluded from doing the full range of a particular work classification or for any other reason—the Secretary is required to pro-

duce vocational expert testimony concerning whether there are jobs available that a person with the claimant's particular characteristics can perform.

*O'Leary v. Schweiker,* 710 F.2d 1334, 1339 (8th Cir.1983). The court will therefore remand this case to the Secretary for review as to whether plaintiff's limitations and restrictions do affect his ability to do the full range of work in the light category and to take testimony from a vocational expert as to the availability of jobs within the category which plaintiff would be able to perform.